# Authority of the Department of Justice to Disclose Statutorily Protected Materials to Its Inspector General in Light of Section 540 of the Commerce, Justice, Science, and Related Agencies Appropriations Act, 2016

Section 540 of the Commerce, Justice, Science, and Related Agencies Appropriations Act, 2016, effectively prohibits the Department of Justice, for the remainder of fiscal year 2016, from denying the Department's Office of the Inspector General ("OIG") timely access to materials requested by OIG, or preventing or impeding OIG's access to such materials, pursuant to the Federal Wiretap Act (Title III of the Omnibus Crime Control and Safe Streets Act of 1968); Rule 6(e) of the Federal Rules of Criminal Procedure; or section 626 of the Fair Credit Reporting Act. As a result, the Department may (and must) disregard the limitations in those statutes in making disclosures to OIG for the remainder of the fiscal year.

April 27, 2016

MEMORANDUM OPINION FOR THE DEPUTY ATTORNEY GENERAL

You have asked us to clarify the authority of the Department of Justice (the "Department") to disclose certain statutorily protected materials to its Office of the Inspector General ("OIG") in light of the enactment of the Commerce, Justice, Science, and Related Agencies Appropriations Act, 2016, Pub. L. No. 114-113, div. B, 129 Stat. 2242 (Dec. 18, 2015) ("CJS Appropriations Act").[1] In particular, you have asked whether the Department may, in light of that Act, disclose to OIG material protected from disclosure by the Federal Wiretap Act, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C. §§ 2510–2522 ("Title III"); Rule 6(e) of the Federal Rules of Criminal Procedure ("Rule 6(e)"); or section 626 of the Fair Credit Reporting Act, 15 U.S.C. § 1681u ("FCRA"). As relevant, section 540 of the CJS Appropriations Act provides that the Department may not use fiscal year 2016 funds "to deny [its] Inspector General . . . timely access to any records, documents, or other materials available to the [D]epartment . . . , or to prevent or impede that Inspector General's access to such records, documents, or other materials, under any provision of law, except a provision of law that expressly refers to the Inspector General and expressly limits the Inspector General's right of access." CJS Appropriations Act § 540. For the

---

[1] *See* E-mail for Karl R. Thompson, Principal Deputy Assistant Attorney General, Office of Legal Counsel, from Carlos Uriarte, Associate Deputy Attorney General, *Re: Request for OLC Opinion* (Mar. 9, 2016 5:16 PM). We requested the views of several potentially affected entities, and received the views of OIG and the National Aeronautics and Space Administration ("NASA"). *See* E-mail for John E. Bies, Deputy Assistant Attorney General, Office of Legal Counsel, from William M. Blier, General Counsel, OIG, *Re: Solicitation of Views*, att. (Mar. 23, 2016 6:11 PM); E-mail for John E. Bies, Deputy Assistant Attorney General, Office of Legal Counsel, from David G. Barrett, Associate General Counsel, NASA, *Re: Solicitation of Views* (Apr. 6, 2016 9:41 AM).

reasons set forth below, we conclude that this provision has the effect of barring the Department, for the remainder of fiscal year 2016, from denying OIG timely access to requested materials pursuant to Title III, Rule 6(e), or section 626 of FCRA, or from preventing or impeding OIG's access to such materials. As a result, the Department may (and must) disregard the limitations in those statutes in making disclosures to OIG for the remainder of the fiscal year.

## I.

We begin with the relevant statutory background and governing legal principles. With the exception of the subsequently enacted CJS Appropriations Act, these statutes and principles are discussed in depth in this Office's recent opinion, *The Department of Justice Inspector General's Access to Information Protected by the Federal Wiretap Act, Rule 6(e) of the Federal Rules of Criminal Procedure, and Section 626 of the Fair Credit Reporting Act*, 39 Op. O.L.C. __ (July 20, 2015) ("OIG Access Opinion") (available at http://www.justice.gov/olc/opinions. htm).

The Inspector General Act of 1978, 5 U.S.C. app. ("IG Act"), established an Office of Inspector General in a large number of federal agencies. 5 U.S.C. app. §§ 2(A), 8G(a)–(b), 12(2). In 1988, Congress extended that Act to the Department and established OIG. *See* Inspector General Act Amendments of 1988, Pub. L. No. 100-504, § 102(c), (f), 102 Stat. 2515, 2515, 2520–21 (codified as amended at 5 U.S.C. app. §§ 8E, 12(1)–(2)). The IG Act grants inspectors general several authorities with respect to the agencies within which their offices are established, including, in section 6(a)(1), the authority "to have access to all records, reports, audits, reviews, documents, papers, recommendations, or other material available to the applicable establishment which relate to programs and operations with respect to which that Inspector General has responsibilities under this Act." 5 U.S.C. app. § 6(a)(1). Section 8E of the Act qualifies this authority in certain circumstances, providing that the Attorney General may "prohibit the Inspector General from carrying out or completing any audit or investigation, or from issuing a subpena . . . if the Attorney General determines that such prohibition is necessary to prevent the disclosure" of certain sensitive materials. *Id.* § 8E(a)(2). On its face, the IG Act thus "requires the Department to disclose 'all' materials [requested by OIG] that are available to the Department, relate to an OIG review of programs or operations within its investigative jurisdiction, and are not covered by a determination to withhold them under section 8E." OIG Access Opinion at *7.

As we explained in our OIG Access Opinion, however, the IG Act is "not in all circumstances the only statute that governs OIG's access to Department materials." *Id.* at *6. The three statutes about which you have asked—Title III, Rule 6(e), and FCRA—also govern access, including OIG's access, to certain highly sensitive Department materials. Title III provides that an investigative or law

enforcement officer "violat[es]" the law by "willful[ly] disclos[ing]" the contents of a lawfully intercepted wire, oral, or electronic communication "beyond the extent permitted by" Title III. 18 U.S.C. § 2520(g). Rule 6(e) provides that "attorney[s] for the government" and other persons "must not disclose a matter occurring before [a] grand jury"—such as testimony that witnesses have delivered in confidential grand jury proceedings—except pursuant to a specific exception. Fed. R. Crim. P. 6(e)(2)(B). And section 626 of FCRA states that the Federal Bureau of Investigation ("FBI") "may not disseminate" consumer information obtained pursuant to a National Security Letter—which may include private banking and credit information collected from credit agencies, frequently without the consumer's knowledge—except under two enumerated exceptions. 15 U.S.C. § 1681u(g).

These statutes permit Department officials to disclose covered materials to OIG in "most, but not all, of the circumstances in which OIG might request [them]." OIG Access Opinion at *3; *see id.* at *8–46 (examining each statute in detail to identify the circumstances in which it permits disclosure to OIG). In particular, Title III and Rule 6(e) allow Department officials to disclose the contents of intercepted communications and grand jury materials to OIG in connection with any OIG investigation or review that relates to the Department's criminal law enforcement activities, and section 626 of FCRA allows the FBI to disclose protected consumer information to OIG if the disclosure could assist in the approval or conduct of foreign counterintelligence investigations. *See id.* at *45. But the statutes do not permit disclosures that "have either an attenuated or no connection" with the Department's criminal law enforcement activities, or the approval or conduct of foreign counterintelligence investigations. *Id.* Accordingly, if OIG were to request access to protected materials in one of those limited circumstances in which Title III, Rule 6(e), or section 626 prohibits their disclosure, Department officials would face potentially conflicting statutory commands. On the one hand, the IG Act states that Department officials must grant OIG access to "all materials" that OIG requests and that fall within OIG's investigative jurisdiction; on the other hand, Title III, Rule 6(e), and section 626 state, respectively, that officials would "violat[e]" the law by disclosing, "must not disclose," or "may not disseminate" the requested materials. *See id.* at *7.

In our OIG Access Opinion, we resolved this conflict by applying two well-established legal principles. First, we observed that "in a range of contexts . . . the Supreme Court and this Office have declined to infer that Congress intended to override statutory limits on the disclosure of highly sensitive information about which Congress has expressed a special concern for privacy, absent a clear statement of congressional intent to that effect." *Id.* at *47. The Court and this Office had previously concluded that this principle required a clear statement before a statute could be construed to authorize the disclosure of information protected by Rule 6(e) or Title III—i.e., confidential material (such as witness testimony) developed in the course of grand jury proceedings, or the contents of

private communications lawfully wiretapped by the government. *Id.* at *47–48. And we concluded in the OIG Access Opinion that "the logic of these opinions . . . extends to section 626 of FCRA" as well, given the "strict duty of confidentiality" and the "penalties for improper disclosure" imposed by section 626, as well as the "highly sensitive" nature of the information section 626 protects—i.e., private consumer banking and credit information obtained by the FBI from credit agencies, frequently without the consumer's knowledge. *Id.* at *49.

Second, we invoked the "rule of relative specificity," which holds that "'[w]here there is no clear [congressional] intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.'" *Id.* at *50 (alterations in original) (quoting *Morton v. Mancari*, 417 U.S. 535, 550–51 (1974)). Title III, Rule 6(e), and section 626 of FCRA "address with greater specificity" than the IG Act "the type of information they regulate," "the precise conditions under which disclosure" is permitted, and "the lawful recipients of information." *Id.* at *52. Accordingly, we concluded that, like the clear statement principle pertaining to highly sensitive information, the rule of relative specificity "require[d] a clear statement" before it could be inferred that "the general right of access granted by section 6(a)(1) [of the IG Act] takes precedence over the specific, carefully delineated limits on disclosure Congress set forth in" Title III, Rule 6(e), and section 626. *Id.* at *53.

Applying these two principles, we concluded that the IG Act does not contain such a clear statement. *Id.* at *54. The Act, we observed, "does not mention" any of the three withholding statutes, or "contain general language addressing potential conflicts with other statutory confidentiality provisions, such as a statement that the inspector general's right of access shall apply 'notwithstanding any other law' or 'notwithstanding any statutory prohibition on disclosure'—language that might, at least in some circumstances, provide a clearer indication that the general access language was supposed to override more specific statutory protections of confidential information." *Id.* (citing *Brady Act Implementation Issues*, 20 Op. O.L.C. 57, 62 (1996)). Although the IG Act grants inspectors general a right "to have access to *all* records" available to their respective agencies and within their investigative jurisdiction, the Supreme Court and this Office have repeatedly concluded that "'expansive modifiers'" like "all" and "any" do not, on their own, supply the kind of clear statement needed to overcome competing interpretive presumptions. *Id.* at *55 (quoting *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 220 n.4 (2008)); *see id.* at *55–56. And while we found "plausible" OIG's contention that certain language in section 6(b)(1) of the IG Act "implies that Congress intended access under section 6(a)(1) to be 'automatic' and free of any 'existing statutory restriction[s],'" we ultimately concluded that the "negative inference" that OIG identified was not "unequivocal enough to establish a clear manifestation of congressional intent," *id.* at *57 (citations omitted), particularly in light of a statement in the Act's Senate report that each inspector general's right of access would be "'subject, of course, to

the provisions of other statutes, such as the Privacy Act,'" *id.* at *59 (quoting S. Rep. No. 95-1071, at 33–34 (1978)).

Our OIG Access Opinion also considered whether an appropriations rider in the Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235, 128 Stat. 2130 (Dec. 16, 2014) ("2015 Appropriations Act"), granted OIG access to information otherwise protected from disclosure by Title III, Rule 6(e), or section 626 of FCRA. Section 218 of the 2015 Appropriations Act stated:

> No funds provided in this Act shall be used to deny the Inspector General of the Department of Justice timely access to all records, documents, and other materials in the custody or possession of the Department or to prevent or impede the Inspector General's access to such records, documents and other materials, unless in accordance with an express limitation of section 6(a) of the Inspector General Act, as amended, consistent with the plain language of the Inspector General Act, as amended. The Inspector General of the Department of Justice shall report to the Committees on Appropriations within five calendar days any failures to comply with this requirement.

*Id.* § 218. We acknowledged that OIG had made "substantial" arguments that this rider required the Department to grant it access to materials otherwise protected by Title III, Rule 6(e), and section 626. OIG Access Opinion at *64. But we ultimately concluded that the rider did not override Title III, Rule 6(e), and section 626 in the limited circumstances in which those statutes bar OIG's access to protected information.

We began our analysis of section 218 by observing that there were "at least three conceivable constructions of the phrase 'express limitation of section 6(a) of the Inspector General Act.'" *Id.* First, this phrase could be interpreted to prohibit Department officials from denying OIG access to materials except under "limitations" on OIG's access that "appear in section 6(a) itself or that expressly refer to that section"—a reading that would have barred the Department from withholding materials from OIG under Title III, Rule 6(e), or section 626 of FCRA, as well as under section 8E of the IG Act itself. *Id*. Second, the provision could be interpreted—as OIG proposed—to refer to "only those limitations on disclosure that are specifically directed at disclosures to OIG under the IG Act, whether or not they explicitly refer to section 6(a)." *Id.* This reading would have permitted the Department to withhold records under section 8E, but not under Title III, Rule 6(e), or section 626. Third, the provision could be interpreted to "encompass all 'express' [statutory] limitations on disclosure that . . . are properly deemed to function as 'limitation[s] of section 6(a).'" *Id.* Under this reading, the Department would be permitted to withhold information under Title III, Rule 6(e), and section 626, as well as section 8E of the IG Act. *See id.* at *66.

We concluded that the first interpretation, although a natural reading of the phrase "express limitation of section 6(a)," was untenable. As noted above, this reading would have meant that the rider had implicitly repealed (among other things) section 8E of the IG Act itself, a provision that "does not refer explicitly to section 6(a)." *Id.* at *65. We thought that result implausible in light of the "strong presumption against implied repeals in appropriations acts," and because other parts of the rider made clear that it was intended to be "consistent with the plain language of the Inspector General Act." *Id.*

Having found this natural reading of section 218's key phrase untenable, we went on to consider the second and third readings we had identified. The second interpretation, we noted, required reading the phrase "in accordance with an express limitation of section 6(a) of the [IG Act]" to mean "in accordance with a limitation that expressly addresses disclosures to OIG under the IG Act." *Id.* Although "not the most natural reading of section 218's text," this reading was in our view plausible because "section 6(a) is the principal provision in the IG Act that governs disclosures to OIG." *Id.* The third reading was likewise "reasonably grounded in the statutory text." *Id.* at *66. "Statutes like Title III, Rule 6(e), and section 626" of FCRA we explained, "can be considered 'limitations of section 6(a)' in that they supersede section 6(a) in situations where both section 6(a) and one of those statutes would apply." *Id.* And they can be considered "express" limitations because "they explicitly contemplate . . . nondisclosure in the circumstances they address"—as opposed to, for example, general statutory provisions that implicitly authorize an agency to withhold information, or agency practices grounded in regulations or other non-statutory authorities. *Id.*

Although we thought that both the second and the third readings of section 218 were plausible, we concluded that the third was more consistent with the relevant principles of statutory interpretation. We noted that, in order to override the limitations on disclosure imposed by Title III, Rule 6(e), and section 626 of FCRA, section 218 would—consistent with the principles we had discussed earlier—need to "contain a clear congressional statement that it was intended to have that effect." *Id.* at *66. And while the second reading of the phrase "express limitation of section 6(a)" was "consonant with" certain "events surrounding [the rider's] enactment," *id.* at *68, it did not follow clearly from the phrase's plain language, but rather "require[d] reading unstated limitations into the rider's text," *id.* at *66. Further, as noted above, the phrase "express limitation of section 6(a)" was also susceptible to another plausible reading—the third reading—that allowed information to be withheld pursuant to Title III, Rule 6(e), and section 626. As a result, that phrase did not in our view "constitute a sufficiently clear statement to override the limitations on disclosure imposed by those statutes." *Id.*

This conclusion was reinforced by the fact that "section 218 appear[ed] in an appropriations act that post-dates the provisions in Title III, Rule 6(e) and section 626 of FCRA." *Id.* "[T]here is a 'very strong presumption' that appropri-

ations measures do not 'amend substantive law,' a presumption that may be overcome only by 'unambiguous[]' evidence to the contrary." *Id.* at *67 (second alteration in original) (quoting *Calloway v. Dist. of Columbia*, 216 F.3d 1, 9 (D.C. Cir. 2000)); *see Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 189–91 (1978). We did not find such evidence in section 218, given that it did not "mention Title III, Rule 6(e), or section 626" or "state that the provision [was] intended to amend existing statutes in any way." OIG Access Opinion at *67. We also noted that the drafters' general statement that section 218 was "designed to improve OIG access to Department documents and information" was consistent with all of the readings we had considered, including the third reading, under which the rider functioned to "reaffirm and reinforce" the existing disclosure requirements in the IG Act by adding timeliness and reporting requirements, and adding the possibility of Anti-Deficiency Act consequences for failure to make required disclosures. *Id.* at *67–68 (quoting 160 Cong. Rec. H9345 (daily ed. Dec. 11, 2014)).

Several months after we issued the OIG Access Opinion, Congress enacted the Consolidated Appropriations Act, 2016, Pub. L. No. 114-113 (Dec. 18, 2015). Division B of that statute, the CJS Appropriations Act, appropriates funds to the Department of Justice and OIG, as well as several additional entities, "for the fiscal year ending September 30, 2016," commonly referred to as fiscal year 2016. Consolidated Appropriations Act, 2016, § 5; *see* CJS Appropriations Act, tit. II. Section 540 of the CJS Appropriations Act provides:

> No funds provided in this Act shall be used to deny an Inspector General funded under this Act timely access to any records, documents, or other materials available to the department or agency over which that Inspector General has responsibilities under the Inspector General Act of 1978, or to prevent or impede that Inspector General's access to such records, documents, or other materials, under any provision of law, except a provision of law that expressly refers to the Inspector General and expressly limits the Inspector General's right of access. A department or agency covered by this section shall provide its Inspector General with access to all such records, documents, and other materials in a timely manner. Each Inspector General shall ensure compliance with statutory limitations on disclosure relevant to the information provided by the establishment over which that Inspector General has responsibilities under the Inspector General Act of 1978. Each Inspector General covered by this section shall report to the Committees on Appropriations of the House of Representatives and the Senate within 5 calendar days any failures to comply with this requirement.

CJS Appropriations Act § 540. In a joint explanatory statement, the statute's drafters explained simply that "[s]ection 540 requires agencies funded by the Act to provide Inspectors General with timely access to information." 161 Cong. Rec. H9745 (daily ed. Dec. 17, 2015); *see* Consolidated Appropriations Act, 2016, § 4 (stating that this explanatory statement "shall have the same effect . . . as if it were a joint explanatory statement of a committee of conference").

## II.

As we explained in the OIG Access Opinion (and as discussed above), an appropriations act may be construed to override the limitations on disclosure contained in Title III, Rule 6(e), and section 626 of FCRA only if the act contains a "clear" and "unambiguous[]" statement that Congress intended it to have that effect. OIG Access Opinion at *66–67; *supra* pp. 6–7. We conclude that section 540 of the CJS Appropriations Act contains such a clear and unambiguous statement, and therefore that it effectively bars the Department from withholding materials from OIG pursuant to Title III, Rule 6(e), or section 626 for the remainder of fiscal year 2016. As a result, the Department may (and must) disregard the limitations in those statutes in making disclosures to OIG during the remainder of that year.

To start, there is no question that section 540 on its face imposes a restriction on the Department's use of fiscal year 2016 funds to deny, prevent, or impede OIG's access to Department materials. The first part of that provision states that "[n]o funds provided in this Act shall be used" to deny, prevent, or impede the access of "an Inspector General funded under this Act" to materials "available to the department or agency over which the Inspector General has responsibilities under the Inspector General Act of 1978." CJS Appropriations Act § 540. The "Act" referred to in section 540 is the CJS Appropriations Act, which appropriates funds both to the Department generally and to OIG specifically for fiscal year 2016. *See* Consolidated Appropriations Act, 2016, § 3 ("Except as expressly provided otherwise, any reference to 'this Act' contained in any division of this Act shall be treated as referring only to the provisions of that division."); CJS Appropriations Act, tit. II (appropriating funds to "the Department of Justice," including $93,709,000 "[f]or necessary expenses of the Office of Inspector General"). And the Department of Justice is the "department . . . over which" OIG has responsibilities under the IG Act. *See* 5 U.S.C. app. §§ 4(a), 8E(b). Section 540 thus prohibits the Department from using any "funds provided in [the CJS Appropriations Act]" to deny, prevent, or impede OIG's access to materials "available to the [D]epartment."

It is likewise clear that the plain language of this funding restriction bars the Department from using fiscal year 2016 funds to withhold materials from OIG pursuant to Title III, Rule 6(e), or section 626 of FCRA. Section 540 states that the Department may not use fiscal year 2016 funds "to deny [OIG] timely access to any records, documents, or other materials available to the [D]epartment . . . , or to prevent or impede [OIG's] access to such records, documents, or other materials,

*under any provision of law*, except a provision of law that expressly refers to the Inspector General and expressly limits the Inspector General's right of access." CJS Appropriations Act § 540 (emphasis added). Title III, Rule 6(e), and section 626 are plainly "provision[s] of law." *See, e.g.*, *Republic of Iraq v. Beaty*, 556 U.S. 848, 856 (2009) (stating that a federal statute is "indisputably" a "provision of law"); *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 867 (D.C. Cir. 1981) (stating that Rule 6(e) is "by any definition . . . a statute"). By withholding materials pursuant to any of those provisions, the Department would be "deny[ing]" or "prevent[ing]" access "under" such provisions. *See, e.g.*, Webster's New World College Dictionary 1574 (5th ed. 2014) (defining "under" in similar context to mean "because of"); *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (referring to "deny[ing] writs of habeas corpus *under* [28 U.S.C.] § 2254" (emphasis added)); OIG Access Opinion at *66 (referring to "withholding *under* Title III, Rule 6(e), and section 626" (emphasis added)). And Rule 6(e) and section 626 do not "refer to[]" inspectors general at all, let alone "expressly limit[]" their access, while the sole provision of Title III that refers to inspectors general does not impose any limit on their right of access. *See* 18 U.S.C. § 2520(f) (requiring the head of a department or agency to "notify the Inspector General with jurisdiction over the department or agency" if the head determines the disciplinary action is not warranted for a violation of Title III, and to "provide the Inspector General with the reasons for such determination").

Furthermore, by prohibiting the Department from using fiscal year 2016 funds to withhold materials pursuant to Title III, Rule 6(e), or section 626 of FCRA, the appropriations rider effectively prohibits the Department from withholding materials pursuant to those statutes for the remainder of fiscal year 2016. This is because in order to withhold materials from OIG during fiscal year 2016, the Department would invariably need to use funds appropriated by the CJS Appropriations Act—if nothing else, because withholding would take time for which a Department employee would be compensated by the CJS Appropriations Act, or entail the use of resources (such as electricity, paper, or a computer) funded by the Act. *See* CJS Appropriations Act, tit. II (appropriating funds for "salaries and expenses"); *McHugh v. Rubin*, 220 F.3d 53, 57 (2d Cir. 2000) ("Even the simple act . . . of processing applications in accordance with a straightforward categorical rule (for example, 'all applications shall be denied') would involve the use of appropriated funds."); *Envt'l Def. Ctr. v. Babbitt*, 73 F.3d 867, 871–72 (9th Cir. 1995) ("The use of any government resources—whether salaries, employees, paper, or buildings—to accomplish a final listing would entail government expenditure.").[2] And incurring an obligation of appropriated funds to withhold

---

[2] We recognize that funds that are not "provided in" the CJS Appropriations Act, such as funds held over from a previous fiscal year, are not subject to section 540. CJS Appropriations Act § 540. And it is possible that some Department employees with custody of materials OIG requests might be paid with such

covered materials might well violate not only section 540 but also the Anti-Deficiency Act, 31 U.S.C. §§ 1341 *et seq.*, a statute that subjects federal officers and employees who expend or obligate funds in excess of appropriated amounts to administrative and, in the case of knowing and willful violations, criminal penalties. *See id.* §§ 1341(a), 1349(a), 1350; *Applicability of the Antideficiency Act to a Violation of a Condition or Internal Cap Within an Appropriation*, 25 Op. O.L.C. 33, 35 (2001) (concluding that "when Congress has expressly prohibited the expenditure of any funds for a particular purpose" within an appropriation, a violation of that condition "would generally constitute a violation of the Antideficiency Act").

Moreover, for at least three reasons, we believe section 540's prohibition on using fiscal year 2016 funds to withhold these materials from OIG—unlike the analogous provisions in the IG Act or section 218 of the 2015 Appropriations Act—is "clear" and "unambiguous[]," and therefore satisfies the clear statement rules described in our OIG Access Opinion. OIG Access Opinion at 53, 66, 68. First, in our view, the only plausible construction of section 540 is that it forbids the use of fiscal year 2016 funds to withhold materials from OIG pursuant to Title III, Rule 6(e), or section 626 of FCRA. As just discussed, section 540 states that the Department may not use such funds to withhold materials from OIG "under any provision of law" except a provision that expressly limits inspector general access, and under no reasonable construction does that language permit the Department to use fiscal year 2016 funds to withhold materials under Title III, Rule 6(e), or section 626. Thus, unlike section 218 of the 2015 Appropriations Act, section 540 is not "susceptible to alternative interpretations, one of which would permit withholding under Title III, Rule 6(e), and section 626," and it therefore cannot be construed in a manner consistent with those statutes. *Id.* at *66; *see The Last Best Beef, LLC v. Dudas*, 506 F.3d 333, 339 (4th Cir. 2007)

---

funds. However, we understand that the vast majority of the Department's salaries and operations are funded by annual appropriations. *See, e.g.*, *id.* tit. II (appropriating funds for, among other things, "Salaries and Expenses" for "General Administration," the United States Parole Commission, "General Legal Activities," the Antitrust Division, United States Attorneys, the Foreign Claims Settlement Commission, the Community Relations Service, the United States Marshals Service, the National Security Division, the FBI, the Drug Enforcement Administration, the Bureau of Alcohol, Tobacco, Firearms and Explosives, and the Federal Prison System). We further understand that these annually appropriated salaries include the salaries of supervisory and senior leadership officials who have general authority to obtain access to materials related to matters they supervise, and, in light of section 540, the authority and obligation to obtain such access in order to disclose requested materials to OIG without regard to the restrictions in Title III, Rule 6(e), or section 626 of FCRA. *See id*.; 28 U.S.C. §§ 509, 510; *see also* 5 U.S.C. § 301. Thus, even if OIG requested materials from the Department in the narrow circumstances in which such materials are protected from disclosure to OIG by Title III, Rule 6(e), or section 626, and even if none of the Department employees with custody of those materials were paid with fiscal year 2016 funds or used resources supported by such funds to process the request, OIG's request could always be elevated to a supervisory official who was paid with fiscal year 2016 funds and had the authority to obtain and disclose the materials notwithstanding the restrictions in Title III, Rule 6(e), or section 626.

(stating that where an appropriations rider is "in absolute contradiction with" an earlier-enacted statute, and an agency "simply cannot comply simultaneously" with both enactments, the agency is "bound to follow Congress's last word on the matter even in an appropriations law" (citations and international quotation marks omitted)).

Second, unlike both section 218 and the IG Act, section 540 expressly "address[es] potential conflicts with other statutory confidentiality provisions." OIG Access Opinion at *54; *see id.* at *67. It specifies that the Department may not use fiscal year 2016 funds to "deny [OIG] timely access . . . under any provision of law," subject to one exception. CJS Appropriations Act § 540. That language is similar to statutory grants of access "notwithstanding any other law" that we have previously found sufficient, at least in some circumstances, to override competing limitations on disclosure. *See, e.g.*, *Brady Act Implementation Issues*, 20 Op. O.L.C. at 62 (stating that the Brady Act's grant of access "notwithstanding any other law" overrides the limitations on disclosure found in the Privacy Act); OIG Access Opinion at *54–55. And it confirms that Congress specifically intended to override other statutory limitations, and did not merely countermand them inadvertently through broad language. *Cf. Ali*, 552 U.S. at 220 n.4 (noting that "circumstances may counteract the effect of expansive modifiers" like "all" and "any"); *Hill*, 437 U.S. at 190 (explaining that the presumption against implied repeals applies with special force to appropriations acts because otherwise "every appropriations measure would be pregnant with prospects of altering substantive legislation" and legislators would be required "to review exhaustively the background of every authorization before voting on an appropriation").

Third, section 540 sets forth only one circumstance in which it would permit the Department to use fiscal year 2016 funds to withhold materials from OIG: where a provision of law "expressly refers to the Inspector General and expressly limits the Inspector General's right of access." CJS Appropriations Act § 540. That narrow exception would be largely superfluous if section 540 did not otherwise prohibit the Department from using such funds to withhold (and thus, in effect, bar the Department from withholding) materials available to the Department pursuant to statutory provisions. And the inclusion of this one exception implies that Congress did not intend to allow others. *See, e.g.*, *Hill*, 437 U.S. at 188 (stating that because Congress "create[d] a number of limited 'hardship exemptions'" to the Endangered Species Act, "we must presume that these were the only 'hardship cases' Congress intended to exempt"); *cf.* OIG Access Opinion at 57 (describing as "plausible" OIG's argument that the IG Act overrode other statutory prohibitions on disclosure based on a negative inference from section 6(b)(1) of the IG Act, but concluding that "the inference OIG invoke[d]" was not sufficiently strong to provide a "clear manifestation of congressional intent" (citation and internal quotation marks omitted)). Moreover, section 8E(a) of the IG Act falls comfortably within the exception's scope. *See* 5 U.S.C. app. § 8E(a)(2) (stating that the Attorney General "may prohibit *the Inspector General* from carrying out or completing any audit or investigation, or

from issuing any subpena . . . *to prevent the disclosure* of" certain sensitive information (emphases added)). A straightforward interpretation of section 540 thus does not invite the result we thought "implausible" when construing section 218 of the 2015 Appropriations Act—namely, an implied partial repeal of a section of the IG Act itself. OIG Access Opinion at *65.

Finally, to return to the question you asked, it follows directly from this prohibition on withholding that the Department may (and must) disregard the limitations in Title III, Rule 6(e), and section 626 of FCRA when it makes disclosures to OIG. As discussed above, for the remainder of the fiscal year, section 540 effectively bars the Department from withholding materials from OIG under Title III, Rule 6(e), or section 626. And in so doing, section 540 effectively overrides the limitations in those statutes with respect to disclosures to OIG during that period. It is therefore plainly permissible—and indeed required—for the Department to disregard those limitations in making disclosures to OIG for the remainder of the fiscal year.

### III.

For the foregoing reasons, we conclude that section 540 of the CJS Appropriations Act effectively prohibits the Department, for the remainder of fiscal year 2016, from denying OIG timely access to materials requested by OIG, or preventing or impeding OIG's access to such materials, pursuant to Title III, Rule 6(e), or section 626 of FCRA. As a result, the Department may (and must) disregard the limitations in those statutes in making disclosures to OIG for the remainder of the fiscal year. We note that, upon obtaining materials from the Department, OIG will be required to "ensure compliance with statutory limitations on disclosure relevant to the information" contained in those materials. CJS Appropriations Act § 540. We have not considered the nature of the Department's and OIG's obligations after fiscal year 2016 with respect to materials to which OIG obtains access under section 540.

KARL R. THOMPSON
*Principal Deputy Assistant Attorney General*
*Office of Legal Counsel*
