**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

THE LAST BEST BEEF, LLC,
              *Plaintiff-Appellee,*

v.

JONATHAN W. DUDAS, in his official
capacity as Under Secretary of
Commerce for Intellectual Property
and Director of the United States
Patent and Trademark Office;
LYNNE G. BERESFORD, in her official
capacity as the Commissioner for
Trademarks for the United States,
              *Defendants-Appellants.*

No. 06-2219

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(1:06-cv-00399)

Argued: September 28, 2007

Decided: October 24, 2007

Before WILKINSON and KING, Circuit Judges,
and Frederick P. STAMP, Jr., Senior United States District Judge
for the Northern District of West Virginia, sitting by designation.

---

Reversed and remanded by published opinion. Judge Wilkinson wrote
the opinion, in which Judge King and Senior Judge Stamp joined.

---

## COUNSEL

**ARGUED:** Joshua Paul Waldman, Civil Division, Appellate Staff, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants. David M. Monachino, SEYFARTH & SHAW, L.L.P., New York, New York, for Appellee. **ON BRIEF:** Peter D. Keisler, Assistant Attorney General, Washington, D.C., Chuck Rosenberg, United States Attorney, Alexandria, Virginia, Scott R. McIntosh, Civil Division, Appellate Staff, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants. Eddy Salcedo, SEYFARTH & SHAW, L.L.P., New York, New York; Alexander X. Jackins, SEYFARTH & SHAW, L.L.P., Washington, D.C., for Appellee.

## OPINION

WILKINSON, Circuit Judge:

We are asked in this case to decide the relationship between the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* (2000), and Section 206 of the subsequently enacted Science, State, Justice, Commerce, and Related Agencies Appropriations Act of 2006 ("§ 206"), which prohibits the use of federal funds to "register, issue, transfer, or enforce any trademark of the phrase 'The Last Best Place.'" The district court deemed § 206 "invalid," and thus a legal nullity, on the grounds that it contradicted but did not constitute an implied repeal or suspension of the Lanham Act. In essence, the district court held that implied repeals through appropriations riders, though constitutional, are so disfavored as to be disallowed. As a result, the district court further declared that the United States Patent and Trademark Office ("USPTO") had committed "clear error" by complying with § 206.

However, in this case, it is the district court that erred. Congress has the power to amend substantive legislation through appropriations riders if it does so very clearly. It did so here in a duly enacted appropriations act with clarity and specificity. We cannot strike down such an act unless unconstitutional. We certainly cannot declare § 206 invalid for contravening a previously enacted piece of legislation.

I.

A Montana writer, William Kittredge, coined the phrase "The Last Best Place" in 1988 as a title to his anthology of Montana poetry and prose. Like a fishing line cast a thousand miles out, the phrase became part of the Montana culture. Local businesses and the Montana state government used it. But at first, no one trademarked it.

Between 2001 and 2004, Last Best Beef, a Nevada business, filed eight applications with the USPTO for federal trademark registration of the phrase "The Last Best Place" in connection with a variety of different products and services. These included cookware, clothing, food products, jewelry, home items, and travel, hotel, and restaurant services.[1] All this activity generated considerable opposition within Montana.

On November 22, 2005, the President signed into law the Science, State, Justice, Commerce, and Related Agencies Appropriations Act of 2006. *See* Pub. L. No. 109-108, 119 Stat. 2290 ("Appropriations Act"). Section 206 of the Appropriations Act, which applies to the USPTO, provides: "Notwithstanding any other provision of this Act, no funds appropriated under this Act shall be used to register, issue, transfer, or enforce any trademark of the phrase 'The Last Best Place.'" Section 206 has been extended through a series of continuing resolutions, the most recent of which extends the restriction through November 16, 2007. *See* H.J. Res. 52, 110th Cong. §§ 101(3), 103-04, 106 (2007).

When the President signed the Appropriations Act into law, Last Best Beef's eight trademark applications were in various stages of consideration with the USPTO. First, the USPTO had issued Notices of Allowances — preliminary approvals of trademark registration, pending proof of use of the trademark in commerce — for four of the

---

[1]In addition, in 2003, Last Best Beef was assigned two federal trademarks: one on the phrase "The Last Best Place Catalog," which was issued to registration in July of 1994, and the second on the phrase "The Last Best Place Catalog Company," which was issued to registration in February of 1995. Last Best Beef failed to maintain the second trademark by renewing it within ten years of its registration.

trademark applications, but it had not yet registered those trademarks. *See* 15 U.S.C. § 1051(d)(1). Second, oppositions by the State of Montana to two of the applications — on the grounds that the phrase "The Last Best Place" is primarily a geographically descriptive term that identifies the State of Montana and is thus not entitled to registration under the Lanham Act, *see* 15 U.S.C. § 1052(e)(2) — were pending before the Trademark Trial and Applications Board ("TTAB"). Finally, on the same day the President signed § 206 into law, but before the USPTO became aware of the legislation, the USPTO had issued certificates of registration for the two remaining trademarks.

Upon learning about § 206, the USPTO in January 2006 (1) cancelled the four Notices of Allowance, (2) suspended all action pertaining to the applications covered by the Notices of Allowance, (3) suspended proceedings regarding the two applications being opposed by the State of Montana before the TTAB, and (4) cancelled the two registrations it had issued and returned those applications to pending status.

In February 2006, Last Best Beef filed a complaint in the United States District Court for the District of Columbia, which later transferred the case to the Eastern District of Virginia. In addition to several constitutional claims,[2] Last Best Beef contended that § 206 improperly circumvented the Lanham Act, and, therefore, the actions the USPTO took under § 206 in January of 2006 were unlawful. As such, Last Best Beef requested an injunction requiring the USPTO to reinstate the cancelled registrations and Notices of Allowance.

The district court granted summary judgment for Last Best Beef, declaring that § 206 was "invalid legislation" insofar as it "improperly circumvent[ed]" the Lanham Act. Specifically, § 1052 of the Lanham Act ("§ 1052") states that "[n]o trademark . . . shall be refused registration on the principal register on account of its nature . . . ." Although § 1052 sets forth a number of exceptions to this rule,[3] the

---

[2]The district court did not address these claims, and neither do we.

[3]*See* 15 U.S.C. § 1052(a) (prohibiting the registration of trademarks that consist of or comprise "immoral, deceptive, or scandalous matter; or matter which may disparage or falsely suggest a connection with per-

district court found that none applied to the phrase "The Last Best Place." Thus, according to the district court, § 206 "circumvented" the Lanham Act "by insisting that any trademark for the phrase 'Last Best Place' be refused registration."

Specifically, the district court concluded that § 206 did not explicitly or implicitly suspend provisions of the Lanham Act with respect to the phrase "Last Best Place." While the district court recognized that an "irreconcilable conflict between two statutes is sufficient to express congressional intent to impliedly repeal an earlier statute," the district court deemed the conflict between § 206 and § 1052 "insufficient to demonstrate manifest congressional intent to suspend numerous, interdependent provisions of the Lanham Act with respect to one phrase . . . ." The district court found § 206 particularly troublesome because appropriations measures are not the appropriate vehicles "for the amendment of general laws." In so concluding, the district court emphasized that it was "not inclined to open the door to a litany of whimsical exceptions to the Lanham Act like those that riddle the Tax Code," as doing so would destabilize businesses and "turn the Trademark Procedures into a statute full of holes and exceptions." Accord-

---

sons, living or dead, institutions, beliefs, or national symbols, or bring them into contempt or disrepute. . . ."); § 1052(b) (prohibiting the registration of marks that consist of or comprise "the flag or coat of arms or other insignia of the United States, or of any State or municipality, or of any foreign nation, or any simulation thereof"); § 1052(c) (prohibiting the registration of marks that consist of or comprise "a name, portrait, or signature identifying a particular living individual except by his written consent," or identifying "a deceased President of the United States during the life of his widow, if any, except by the written consent of the widow"); § 1052(d) (prohibiting the registration of marks which "so resemble[ ] a mark" already registered or which have been "previously used in the United States by another and not abandoned . . . when used . . . to cause confusion, or to cause mistake, or to deceive. . . .") § 1052(e)(1) (prohibiting the registration of marks that are "merely descriptive or deceptively misdescriptive" of an applicant's goods); § 1052(e)(2)-(3) (prohibiting the registration of marks that are "primarily geographically descriptive" or "geographically deceptively misdescriptive" of an applicant's goods); § 1052(e)(4) (prohibiting the registration of a mark that is "primarily merely a surname").

ing to the district court, since § 206 did not conflict with § 1052 enough to repeal it, but conflicted with it too much to be enforced, § 206 must be "invalid."

Finally, the district court stated that nothing in § 206 authorized the USPTO to cancel pending trademark applications or to suspend either the Notices of Allowance or the TTAB proceedings, and thus ordered the USPTO to reinstate the previously issued trademarks, the suspended Notices of Allowance, and the suspended TTAB proceedings. Having resolved the case on statutory grounds, the district court found it unnecessary to reach Last Best Beef's constitutional arguments.

The USPTO now appeals.

## II.

Last Best Beef contends, in agreement with the district court, that § 206 cannot constitute an implied repeal or suspension[4] of § 1052 because § 206 fails to state that it is amending either the Lanham Act or trademark law, and indeed makes no mention of the Lanham Act at all. Thus, Last Best Beef contends, § 206 fails the requirement set forth in *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 189 (1978) ("*TVA*"), namely that congressional intent to effectuate an implied repeal must be unambiguous. Last Best Beef further argues that "appropriations bills are *not* appropriate vehicles for the passage or amendment of substantive law." *See Andrus v. Sierra Club*, 442 U.S. 347, 361 (1979) ("The distinction [between appropriations and substantive legislation] is maintained . . . to enable the Appropriations Committees to concentrate on financial issues and to prevent them from trespassing on substantive legislation.") (internal quotations omitted).

In support of these arguments, Last Best Beef relies heavily upon the Supreme Court's decision in *TVA*, in which the Court held that the

---

[4]The terms "repeal," "suspension," and "amendment" appear throughout both the district court opinion and the briefs. We are unable to discern any operative difference among these terms in this case where the result of later legislative action is to deprive an earlier enactment of force and effect.

Endangered Species Act ("ESA") prohibited the Tennessee Valley Authority ("TVA") from putting into operation the Tellico Dam, despite the fact that Congress had, after the enactment of the ESA, continued to make appropriations to the TVA, some of which were earmarked for the Tellico Dam project. 437 U.S. at 153. In so holding, the Court made clear "that repeals by implication are not favored," and therefore, "the intention of the legislature to repeal must be clear and manifest." *Id.* at 189 (quoting *Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936)). Moreover, the doctrine disfavoring repeals by implication "applies with full vigor when . . . the subsequent legislation is an *appropriations* measure." *TVA*, 437 U.S. at 190 (emphasis in original) (quoting *Committee for Nuclear Responsibility v. Seaborg*, 463 F.2d 783, 785 (D.C. Cir. 1971)).

While the canon of statutory interpretation disfavoring implied repeals in appropriations bills is strong, it is still just a canon of interpretation. It is not an absolute rule. The Court has made clear that if and when Congress wishes to suspend or repeal a statute in force, "[t]here can be no doubt that . . . it could accomplish its purpose by an amendment to an appropriation bill, or otherwise." *United States v. Dickerson*, 310 U.S. 554, 555 (1940); *see also United States v. Will*, 449 U.S. 200, 222 (1980). Indeed, "Congress . . . may amend substantive law in an appropriations statute, as long as it does so clearly." *Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 440 (1992). An irreconcilable conflict between the old and new legislation can demonstrate such clear intent to repeal. "Where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one." *Posadas*, 296 U.S. at 503; *see also TVA*, 437 U.S. at 190; *Georgia v. Pennsylvania R.R. Co.*, 324 U.S. 439, 457 (1945).

In fact, the Court in *TVA* did not reject the principle that implied repeals could be effectuated through appropriations acts; rather, the Court simply found that the particular appropriations bill at issue — which neither explicitly identified the projects for which the sums had been appropriated nor provided a statutory command that the Tellico Dam should be completed — was insufficient to constitute an implied repeal of the ESA. *TVA*, 437 U.S. at 189-91; *see also Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 127 S.Ct. 2518, 2536 (2007) (describing *TVA*).

Therefore, whether Congress has, through § 206, impliedly suspended the Lanham Act in one particular instance presents an ordinary question of statutory interpretation that requires us to determine whether or not Congress clearly expressed its intention to repeal through an irreconcilable conflict between § 206 and § 1052. *See Pennsylvania R.R. Co.*, 324 U.S. at 457 (where a "clear repugnancy between the old law and the new" exists, the former must give way).

Congress did create such a conflict. As Last Best Beef itself pointed out, "Section 206 prevents, in absolute contradiction with the Lanham Act, *one* phrase from being trademarked." *Brief of Appellees* at 12. Indeed, as both Last Best Beef and the district court recognize, the USPTO simply cannot comply simultaneously with § 1052 of the Lanham Act, which prohibits the refusal of trademark registration "on account of [the trademark's] nature" and § 206, which prohibits the use of funds to "register, issue, transfer, or enforce any trademark of the phrase 'The Last Best Place.'" *Id.*; *see also Memorandum Order* at 9-10 ("Section 206 conflicts with this provision [of the Lanham Act] by insisting that any trademark for the phrase 'Last Best Place' be refused registration."). This is a paradigm of an irreconcilable conflict. Thus, "[w]here Congress chooses to amend substantive law in an appropriations rider, we are bound to follow Congress's last word on the matter even in an appropriations law." *Strawser v. Atkins*, 290 F.3d 720, 734 (4th Cir. 2002) (internal quotations omitted).

The conclusion that Congress intended to enact a discrete and narrow exception to the Lanham Act is unavoidable. In fashioning § 206, Congress simply set forth an exception to the Lanham Act's general rule that trademark registration may not be refused on the basis of the nature of the trademark**.** This is something Congress can do. In fact, Congress has often removed specific trademarks from the general trademark application process. *See, e.g.*, 18 U.S.C. § 711 (2000) (giving the Department of the Interior the exclusive right to use the character and name of "Smokey Bear"); 36 U.S.C. § 80305 (2000) (giving "The Girl Scouts of America the exclusive right to use all emblems and badges, descriptive or designating marks, and words or phrases the [Girl Scouts of America] adopts, including the badge of the Girl Scouts . . . ."); § 130506 (giving Little League Baseball the exclusive right to use the names "Little League" and "Little Leaguer" and "the

official Little League emblem or any colorable simulation of that emblem"); § 220506(a) (giving the United States Olympic Committee the exclusive right to use the name "United States Olympic Committee").

Moreover, while we are willing to assume with the district court that this is an implied suspension or repeal, even that assumption is in question. Since the Lanham Act is the only statutory authority under which the USPTO could take the actions forbidden in § 206, it might easily be held that § 206 refers expressly to the Lanham Act for the simple reason that it could not be referring to anything else. Section 206 admits of no doubt: it forbids the use of funds to register or issue trademarks on the phrase "The Last Best Place." *Cf. McHugh v. Rubin*, 220 F.3d 53, 58 (2d Cir. 2000) (appropriations statutes that "speak in terms of the ATF's ability to spend appropriated funds . . . "obvious[ly]" prohibits the ATF from acting altogether); *NTEU v. Devine*, 733 F.2d 114, 114, 120 (D.C. Cir. 1984) (an appropriations measure prohibiting the use of funds to "implement, promulgate, administer or enforce" proposed Office of Personnel Management regulations must be construed to prevent the "implementation, administration, or enforcement" of the regulations themselves).

In the face of such clarity, to declare § 206 "invalid" is to adopt a *per se* rule that Congress cannot amend or suspend prior legislation through appropriations riders. We decline to take such a step. While the district court expressed the view that it was unwilling to see the Lanham Act punctuated by the types of exceptions that characterize such complex bodies of law as the Internal Revenue Code, the wisdom of tradeoffs between simplicity and complexity is for Congress to decide, not the federal courts. What may seem inadvisable on the part of Congress is not unconstitutional. The judgment must be reversed.

### III.

Last Best Beef also contends that the USPTO lacked authority to cancel or suspend the trademark registrations, the Notices of Allowance, or the TTAB proceedings, insofar as § 206 did not authorize "the cancellation or suspension of any registration or Notice of Allowance in circumvention of the Lanham Act." *Brief of Appellees*

at 18. The district court agreed, noting that "Section 206 does not give the USPTO the authority to cancel pending trademark applications."

While Last Best Beef and the district court both correctly note that § 206 does not explicitly spell out the USPTO's authority to cancel or suspend the trademark registrations, applications, and Notices of Allowance, the USPTO's authority to take such actions need not derive from § 206. The authority comes from the USPTO's inherent discretion to correct its own errors and to manage its own docket. *See, e.g.*, *Florida Mun. Power Agency v. FERC*, 315 F.3d 362, 366 (D.C. Cir. 2003); *Macktal v. Chao*, 286 F.3d 822, 825-26 (5th Cir. 2002) (agencies have inherent authority to "reconsider" prior decisions).

First, federal agencies, including the USPTO, have broad authority to correct their prior errors. *See*, *e.g.*, *Alto Dairy v. Veneman*, 336 F.3d 560, 568 (7th Cir. 2003); *Macktal*, 286 F.3d at 825-26; *Trujillo v. Gen. Elec. Co.*, 621 F.2d 1084, 1086 (10th Cir. 1980). Indeed, when federal agencies take erroneous or unlawful action, courts generally should not stand in the way of the agencies' remediation of their own mistakes. *See Citizens Against the Pellissippi Pkwy Extension v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2002). In fact, it would be "an abuse of discretion to prevent an agency from acting to cure . . . legal defects." *Id.* The USPTO erred in registering two of Last Best Beef's trademarks for the phrase "The Last Best Place" after § 206 went into effect, and the USPTO acted within its inherent authority to correct its unlawful action by cancelling the issuance of those two registrations.

Second, because § 206 prohibits the USPTO from using funds to register any trademark of the phrase "The Last Best Place," any proceedings on Last Best Beef's six remaining trademark applications would involve a waste of limited administrative resources. It hardly makes sense for the USPTO to conduct administrative proceedings on Last Best Beef's applications if registration, at the culmination of those proceedings, would run afoul of the statute. This is so even if the proceedings themselves did not violate § 206, a question which we need not and do not reach.

IV.

On a general level, Last Best Beef certainly has a point. Where possible, courts should attempt to harmonize statutory provisions and

not go searching for implied repeals. Where, as here, reconciliation is not possible, courts have no choice but to give effect to the later enactment. To adopt appellee's position would be to construct artificial obstacles to the efforts of current democratic majorities to enact their views into law.

The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*