> This Opinion is a
> Precedent of the TTAB

Mailed: December 26, 2024

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*In re Nursecon, LLC*

————

Serial No. 88052194

————

David Greenbaum of Rimon, P.C., for Nursecon, LLC.

Ingrid Eulin, Trademark Examining Attorney, Law Office 105,
    Jennifer Williston, Managing Attorney.

————

Before Lynch, Larkin, and Myles,
    Administrative Trademark Judges.

Opinion by Myles, Administrative Trademark Judge:

Nursecon, LLC ("Applicant") seeks to register the proposed standard character mark NURSECON on the Principal Register for services ultimately identified as "Arranging and conducting special events for social entertainment purposes" in International Class 41.[1] The Examining Attorney refused registration on the ground

---

[1] Application Serial No. 88052194 was filed July 25, 2018 based on an allegation of a bona intent to use under Trademark Act Section 1(b), 15 U.S.C. § 1051(b). Applicant filed a Statement of Use on February 10, 2022, claiming April 8, 2021 as both the date of first use and the date of first use in commerce.

that the proposed mark is merely descriptive of the identified services under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1).

## I. Prosecution History and Record on Appeal[2]

We briefly summarize the prosecution history of the application and the application record because they provide useful background to our analysis of the issues on appeal.

In its initial application, Applicant sought registration for services identified as "Arranging and conducting educational conferences; Arranging and conducting special events for social entertainment purposes" in Class 41. Applicant deleted "Arranging and conducting educational conferences" from its identification of services when it filed its Statement of Use.[3] After Applicant's Statement of Use was accepted and the application was published for opposition, but before the registration issued, a note was added to the application file stating: "It has come to the examining

---

[2] All citations to documents contained in the Trademark Status & Document Retrieval (TSDR) database are to the downloadable .pdf versions of the documents. *See, e.g., In re Seminole Tribe of Fla.*, Ser. No. 87890892, 2023 TTAB LEXIS 184, at *1 n.1 (TTAB 2023).

This opinion cites to decisions of the U.S. Court of Appeals for the Federal Circuit and the U.S. Court of Customs and Patent Appeals by the page(s) on which they appear in the Federal Reporter (e.g., F.2d, F.3d, or F.4th). For decisions of the Board and the Director of the United States Patent and Trademark Office (USPTO), this opinion cites to the LEXIS legal database. TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 101.03 (2024). The proceeding or application number for cited Board decisions is also provided, if available. Practitioners should also adhere to the citation form recommended in TBMP § 101.03. Precedential decisions of the Board, and precedential decisions of the Federal Circuit involving Board decisions that issued January 1, 2008 or after, may be viewed in TTABVUE by entering the proceeding number, application number, registration number, expungement/reexamination number, mark, party, or correspondent. Many precedential Board decisions that issued from 1996 to 2008 are available online from the TTAB Reading Room by entering the same information. Most TTAB decisions that issued prior to 1996 are not available in USPTO databases.

[3] February 10, 2022 Statement of Use.

attorney's attention that a refusal of registration must issue. Due to processing limitations, the USPTO is unable [to] stop the registration from issuing. Therefore, on the registration date, the registration will be cancelled as inadvertently issued and the application restored to pendency in order for a refusal to be issued."[4]

After the registration was automatically issued, it was cancelled and the application was restored to pending status. The Examining Attorney issued an Office Action refusing registration of the proposed mark on the ground that it is merely descriptive, making of record definitions of the words "nurse," "con," "convention," "special," and "event,"[5] and copies of third-party registrations for marks incorporating the element CON in which the mark is either registered on the Supplemental Register or the element CON has been disclaimed.[6]

In response, Applicant argued "that the USPTO exceeded its authority by unilaterally cancelling an issued registration to re-open examination of the Application" and that the proposed mark is not merely descriptive.[7] Applicant also made of record copies of third-party registrations for marks incorporating the element CON registered on the Principal Register with no disclaimer of CON and no claim of

---

[4] May 2, 2022 Notation to File.

[5] June 22, 2022 Office Action at 6-29 and 32-36.

[6] *Id.* at 37-70.

[7] December 22, 2022 Response to Office Action at 11-12.

acquired distinctiveness under Trademark Act Section 2(f), 15 U.S.C. § 1052(f),[8] and copies of third-party websites showing use of the registered marks.[9]

The Examining Attorney made the refusal final, making of record the following: copies of Applicant's websites and social media pages;[10] a copy of Applicant's mobile application;[11] third-party websites discussing Applicant;[12] definitions of CON;[13] third-party websites showing use of CON as an abbreviated form of "conference" or "convention;"[14] a copy of a third-party website about a Washington state nursing convention;[15] copies of Applicant's Registration Nos. 6756054 for the mark NURSECON and 6835561 for the mark NURSECON AT SEA, both on the Supplemental Register;[16] Wikipedia and third-party websites discussing the popularity of COMIC-CON[17] conventions for comic books; and definitions of the word NURSE.[18]

Applicant filed both an appeal and a Request for Reconsideration, making of record additional third-party registrations for marks incorporating the element CON

---

[8] *Id.* at 23-61 and 120-75.

[9] *Id.* at 63-118 and 177-236.

[10] February 1, 2023 Final Office Action at 9-10 and 14-23.

[11] *Id.* at 11-13 (apps.apple.com/us/nursecon/id1565528228).

[12] *Id.* at 24-28.

[13] *Id.* at 29-32, 135-44 and 170-79.

[14] *Id.* at 33-93 and 106-111.

[15] *Id.* at 94-101.

[16] *Id.* at 102-05.

[17] *Id.* at 112-34.

[18] *Id.* at 161-62 (THE AMERICAN HERITAGE DICTIONARY) and 163-70 (THE FREE DICTIONARY).

registered on the Principal Register with no disclaimer of CON and no claim of acquired distinctiveness,[19] and copies of third-party websites showing use of the registered marks.[20]

The Examining Attorney denied Applicant's Request for Reconsideration, making of record the following: additional definitions for CON;[21] additional examples of Applicant's websites using the NURSECON designation;[22] third-party websites discussing the meaning of "events" and "special events;"[23] third-party websites discussing "nursing conferences;"[24] third-party websites discussing Applicant;[25] and additional examples of third-party websites using the element CON as an abbreviated form of "conference" or "convention."[26]

After the appeal was resumed, the Board dismissed the appeal for Applicant's failure to file a brief.[27] The Board then granted Applicant's motion to vacate the

---

[19] August 1, 2023 Request for Reconsideration at 11-18.

[20] *Id.* at 19-33.

[21] November 8, 2023 Denial of Request for Reconsideration at 5-12.

[22] *Id.* at 13-20, 39-46, 58-67, and 96-98.

[23] *Id.* at 21-37.

[24] *Id.* at 47-57.

[25] *Id.* at 68-74.

[26] *Id.* at 85-94.

[27] 10 TTABVUE. Citations in this opinion to the briefs and other filings on appeal refer to TTABVUE, the Board's online docketing system. *See New Era Cap. Co. v. Pro Era, LLC*, Opp. No. 91216455, 2020 TTAB LEXIS 199, at *4 n.1 (TTAB 2020). The number preceding TTABVUE corresponds to the docket entry number, and any numbers following TTABVUE refer to the page(s) of the docket entry where the cited materials appear.

Board's order and reopen proceedings.[28] Applicant and the Examining Attorney then each filed briefs.[29]

For the reasons explained below, we affirm the refusal to register.

## II. Inadvertently Issued Registration

### A. Summary of Arguments

Applicant argues that the USPTO did not have the authority to cancel Applicant's registration and "re-open" examination to issue a descriptiveness refusal that could have been raised during initial examination.[30] Applicant argues that the USPTO's jurisdiction over a trademark application ends with the issuance of the registration and that, absent some change in fact or law, or some other exigent circumstances not present here, the USPTO lacks the authority to cancel a previously-issued registration.[31]

In response, the Examining Attorney explains that the USPTO determined prior to the issuance of the registration that Applicant's proposed mark would be registered contrary to the provisions of Trademark Act Section 2(e)(1), but that "due to internal processing limitations the USPTO was unable to stop its systems from issuing a registration."[32] The Examining Attorney argues that "[t]he USPTO has a duty to issue valid registrations by ensuring applications are examined for compliance with

---

[28] 12 TTABVUE.

[29] 13 TTABVUE (Applicant's appeal brief) and 15 (Examining Attorney's brief).

[30] 13 TTABVUE 8-10.

[31] *Id.*

[32] 15 TTABVUE 11.

the requirements of the Trademark Act and USPTO rules," and that the USPTO has "inherent authority to correct its errors, including by taking action to withdraw a registration from issuance or to cancel an issued registration."[33]

## B. Discussion

The USPTO has a duty to issue valid registrations in compliance with the Trademark Act and "to examine all trademark applications for compliance with each and every eligibility requirement." *In re Cordua Rests., Inc.*, 823 F.3d 594, 600 (Fed. Cir. 2016). The USPTO, like all administrative agencies, possesses inherent authority to reconsider its decisions. *See GTNX, Inc. v. INTTRA, Inc.*, 789 F.3d 1309, 1313 (Fed. Cir. 2015) ("[A]dministrative agencies possess inherent authority to reconsider their decisions, subject to certain limitations, regardless of whether they possess explicit statutory authority to do so.") (quoting *Tokyo Kikai Seisakusho, Ltd. v. U.S.*, 529 F.3d 1352, 1360 (Fed. Cir. 2008)); *Macktal v. Chao*, 286 F.3d 822, 825 (5th Cir. 2002). The USPTO also has "broad authority to correct [its] errors." *The Last Best Beef, LLC v. Dudas*, 506 F.3d 333, 340 (4th Cir. 2007) (holding that the USPTO acted within its inherent authority to correct its own unlawful action by canceling the issuance of two registrations). "[I]f the examining attorney determines that a clear error was made during initial examination, i.e., an error that, if not corrected, would result in issuance of a registration in violation of the Trademark Act or applicable rules, the examining attorney must issue any refusals or requirements, even if they could or should have been previously raised during initial examination of the subject

---

[33] *Id.* at 10-11.

application." *In re Driven Innovations, Inc.*, Ser. No. 77073701, 2015 TTAB LEXIS 179, at *7 (TTAB 2015), *rev'd and remanded on other* grounds, 674 Fed. Appx. 996 (Fed. Cir. 2017) (quoting TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 706.01 (Nov. 2024)).

Although neither the note to the file nor the Final Office Action explicitly stated that the failure to issue a descriptiveness refusal was a "clear error," the determination that a refusal should have issued under Trademark Act Section 2(e)(1) was nevertheless a finding of clear error. *In re Jump Designs LLC*, Ser. No. 76393986, 2006 TTAB LEXIS 209, at *9-10 (TTAB 2006) (it was not necessary for the Examining Attorney to explicitly state that the substantive refusal was made under the 'clear error' standard). "Clear error" is "merely an administrative guideline … [that does not] impose a higher standard of proof on the examining attorney than is otherwise required to establish a prima face case for the refusal or requirement." *Driven Innovations*, 2015 TTAB LEXIS 179, at *5 (citing TMEP § 706.01).

While the USPTO endeavors to conduct a thorough examination of each application and issue any necessary requirements or refusals in the first Office Action, "doing so is not a requirement of statute or regulation." *Id.* at *12 (affirming refusal to register where descriptiveness refusal was not made until after a notice of allowance was issued and the applicant filed a statement of use).

Here, the Examining Attorney discovered that registration of NURSECON on the Principal Register would be in violation of Section 2(e)(1) of the Trademark Act, but due to technical limitations of the USPTO system, the Examining Attorney was

unable to prevent the system from automatically issuing the registration.[34] Under such circumstances, the Examining Attorney identified the issue in a note to the file that also stated that the registration would be considered an inadvertently issued registration, and therefore "would be cancelled." *Cf. Schering-Plough Animal Health Corp. v. Aqua Gen As*, Opp. No. 91176641, 2009 TTAB LEXIS 71, at *2 (TTAB 2009) (where application subject to opposition was "inadvertently forwarded for issuance of a registration … the Director [] cancelled the registration and restored the application to pending status."). Applicant points to TMEP § 1609.10(a), noting that "[n]othing in that section provides authority for the USPTO to cancel a registration and to re-examine the application without a change in the facts or the law."[35] TMEP § 1609.10(a) (where further examination is required to correct a USPTO error, "the registration may be cancelled as inadvertently issued and the application will be returned to examination.").

The premise of Applicant's argument is incorrect. As explained above, the USPTO possesses inherent authority to correct its errors, recognized by courts in the cases discussed above. That authority does not derive from the TMEP. Rather, the TMEP provides guidance for procedure. *See* Foreword to TMEP.

Thus, the cancellation of the registration number as inadvertently issued was an appropriate exercise of the USPTO's inherent authority to correct its errors. *See GTNX, Inc.*, 789 F.3d at 1313; *Last Best Beef*, 506 F.3d at 340.

---

[34] May 2, 2022 Notation to File.

[35] 13 TTABVUE 8.

To the extent that Applicant argues that the subsequent refusal was improper or not justified, the appropriate remedy under such circumstances is to do what Applicant did here, appeal the merits of the substantive final refusal to the Board, because "[a]djudication of the substantive refusal implicitly decides the propriety of the refusal." *Driven Innovations*, 2015 TTAB LEXIS 179, at *13.

In view of the foregoing, we reject Applicant's argument that the USPTO lacks authority to cancel the inadvertently issued registration, and that the cancellation was unjustified or procedurally improper. Thus, we turn to the substantive merits of the final refusal.

### III. Mere Descriptiveness Refusal

**A. Applicable Law**

"A term is deemed to be merely descriptive of goods or services, within the meaning of Section 2(e)(1), if it forthwith conveys an immediate idea of an ingredient, quality, characteristic, feature, function, purpose or use of the goods or services." *In re Zuma Array Ltd.*, Ser. No. 79288888, 2022 TTAB LEXIS 281, at *6 (TTAB 2022) (internal quotations and citations omitted). "A mark need not immediately convey an idea of each and every specific feature of the goods [or services] in order to be considered merely descriptive; it is enough if it describes one significant attribute, function or property of the goods [or services]." *Id.* (cleaned up).

"Whether a mark is merely descriptive is evaluated in relation to the particular [services] for which registration is sought, the context in which it is being used, and the possible significance that the term would have to the average purchaser of the

[services] because of the manner of its use or intended use and not in the abstract or on the basis of guesswork." *In re Fallon*, Ser. No. 86882668, 2020 TTAB LEXIS 464, at *21 (TTAB 2020) (internal quotations omitted). "We ask whether someone who knows what the goods and services are will understand the mark to convey information about them." *Id.* at *21-22 (cleaned up). "A mark is suggestive, and not merely descriptive, if it requires imagination, thought, and perception on the part of someone who knows what the goods [or services] are to reach a conclusion about their nature from the mark." *Id.* at *22 (citing *In re Fat Boys Water Sports LLC*, Ser. No. 86490930, 2016 TTAB LEXIS 150, at *4 (TTAB 2016)).

When two or more merely descriptive terms are combined, the composite mark "is registrable only if the combination of terms creates a unitary mark with a nondescriptive meaning, or if the composite has a bizarre or incongruous meaning as applied to the goods or services." *In re Omniome, Inc.*, Ser. No. 87661190, 2019 TTAB LEXIS 414, at *12 (TTAB 2019). However, if each component retains its merely descriptive significance in relation to the goods or services, the combination results in a composite that is itself merely descriptive. *Id.* (citing *In re Oppedahl & Larson LLP*, 373 F.3d 1171, 1174-75 (Fed. Cir. 2004)); *In re Phoseon Tech.*, Ser. No. 77963815, 2012 TTAB LEXIS 306, at *3 (TTAB 2012).

"Whether a mark is merely descriptive or not is determined from the viewpoint of the relevant purchasing public." *Omniome*, 2019 TTAB LEXIS 414, at *16 (cleaned up). Evidence that a term is merely descriptive to the relevant purchasing public "may be obtained from any competent source, such as dictionaries," *In re Bayer AG*,

488 F.3d 960, 964 (Fed. Cir. 2007), as well as "advertising material directed to the [services]." *In re Abcor Dev. Corp.*, 588 F.2d 811, 814 (Fed. Cir. 1978). *See also In re Nett Designs, Inc.*, 236 F.3d 1339, 1341-42 (Fed. Cir. 2001). It may also be obtained from websites and publications. *In re N.C. Lottery*, 866 F.3d 1363, 1368 (Fed. Cir. 2017). Evidence that a term is merely descriptive similarly may come from an applicant's own usage. *See, e.g., In re Chamber of Com. of the U.S.*, 675 F.3d 1297, 1301 (Fed. Cir. 2012) (content of applicant's website constituted evidence supporting the Board's finding of mere descriptiveness). Additionally, evidence that a term is merely descriptive may be found in third-party usage in connection with goods or services similar or related to those at issue. *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1378 (Fed. Cir. 2012).

### B. Summary of Arguments

The Examining Attorney argues that Applicant's proposed mark is merely descriptive because NURSE describes the target consumers of Applicant's services, CON is a shortened version of "conference" or "convention," (both of which are "particular special events provided as part of Applicant's services,") and the combination of the two words does not alter the descriptive meaning of the proposed mark.[36]

Applicant argues that its mark is not merely descriptive because "Applicant's coined term NURSECON does not exist other than as Applicant's brand."[37] Applicant

---

[36] 15 TTABVUE 5-6.

[37] 13 TTABVUE 11.

also argues that its mark is at most suggestive, because it does not immediately describe any quality, feature or characteristic of Applicant's services, and that "[t]he USPTO has consistently and repeatedly found that other marks with the suffix '-CON' are inherently distinctive as evidenced by the more than 20 recent registrations for such terms on the Principal Register with no disclaimer of the '-CON' term and no Section 2(f) designation."[38] Finally, Applicant argues that any doubt must be resolved in its favor.[39]

### C. Analysis of Refusal

Our determination as to whether Applicant's proposed mark NURSECON is merely descriptive is based on an analysis of the proposed mark as a whole. *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1252 (Fed. Cir. 2012) ("When determining whether a mark is merely descriptive, the Board must consider the commercial impression of a mark as a whole."). "In considering the mark as a whole … [we] 'may weigh the individual components of the mark to determine the overall impression or the descriptiveness of the mark and its various components.'" *Real Foods Pty Ltd. v. Frito-Lay N. Am., Inc.*, 906 F.3d 965, 974 (Fed. Cir. 2018) (quoting *Oppedahl*, 373 F.3d at 1174). "The Board, to be sure, may ascertain the meaning and weight of each of the components that makes up the

---

[38] *Id.*

[39] *Id.* at 12.

mark[,]" so long as it ultimately considers the mark as a whole. *DuoProSS*, 695 F.3d at 1253.

Applicant's proposed mark consists of the word NURSE and the element CON. Turning first to the word NURSE, the Examining Attorney made of record a definition of the word "nurse" as "a person who cares for the sick or infirm."[40] During prosecution, Applicant argued that NURSE has multiple meanings apart from that of a "person who cares for the sick or infirm" and "[w]hen the public could understand a term to have multiple meanings, the term is suggestive, rather than descriptive."[41] The fact that a term may have other meanings in different contexts is not controlling. *See In re NextGen Mgmt., LLC*, Ser. No. 88098031, 2023 TTAB LEXIS 1, at *8 (TTAB 2023); *In re Polo Int'l Inc.*, Ser. No. 74729974, 1999 TTAB LEXIS 59, at *3-5 (TTAB 1999). It is well established that the determination of mere descriptiveness is made not in the abstract but in relation to the services for which registration is sought. *Bayer AG*, 488 F.3d at 964; *In re Eng'g Sys. Corp.*, Ser. No. 73507205, 1986 TTAB LEXIS 8, at *6 (TTAB 1986). "[T]he question is whether someone who knows what the goods or services are will understand the mark to convey information about them." *DuoProSS*, 695 F.3d at 1254 (quoting *In re Tower Tech Inc.*, Ser. No. 75709532, 2002 TTAB LEXIS 300, at *7 (TTAB 2002)).

---

[40] June 22, 2022 Office Action at 6 (MERRIAM-WEBSTER DICTIONARY). *See also* February 1, 2023 Final Office Action at 161-62 (THE AMERICAN HERITAGE DICTIONARY) and 163-70 (THE FREE DICTIONARY).

[41] August 1, 2023 Request for Reconsideration at 6.

"In descriptiveness cases in which there is record evidence of the applicant's use of the proposed mark, the Board 'must consider [the] mark in its commercial context to determine the public's perception.'" *Zuma Array*, 2022 TTAB LEXIS 281, at *18 (quoting *N.C. Lottery*, 866 F.3d at 1367). "We cannot ignore the reality that '[p]roof of mere descriptiveness may originate from [an applicant's] own descriptive use of its proposed mark, or portions thereof' in its materials." *In re Berkeley Lights, Inc.*, Ser. No. 88895703, 2022 TTAB LEXIS 382, at *17-18 (TTAB 2022) (quoting *Omniome*, 2019 TTAB LEXIS 414, at *14). "[A]n applicant's own website and marketing materials may be … 'the most damaging evidence' in indicating how the relevant purchasing public perceives a term." *Id.* (quoting *In re Mecca Grade Growers, LLC*, Ser. No. 86358219, 2018 TTAB LEXIS 64, at *25-26 (TTAB 2018) (quoting *In re Gould Paper Corp.*, 834 F.2d 1017, 1019 (Fed. Cir. 1987)). Evidence of descriptiveness may also come from an applicant's specimen. *See N.C. Lottery*, 866 F.3d at 1368. As is evident from Applicant's own use of its proposed mark NURSECON, consumers would immediately understand NURSE to mean a person who cares for the sick or infirm when considered in conjunction with Applicant's services. Applicant's specimen, shown below, consists of "[p]romotional material sent out to subscribers by Applicant via email," and invites NurseCon members to a virtual happy hour hosted by "Nurse Blake":[42]

---

[42] February 10, 2022 Specimen.

Promotional material sent out to subscribers by Applicant via email



# Tonight at 8 PM ET

**NurseCon member happy hour tonight at 8:00 pm ET.** Be sure to join me tonight and hang out with other awesome NurseCon members.

To participate all you have to do is log into NurseCon.com, go to Community > Events, and then a button will appear 10-minutes prior to the start time to join. If you do not have Zoom installed, you will be prompted to do so at the start of the event. You do not need a Zoom account to participate.

I can't wait to meet you face to face tonight!

- Nurse Blake

**Join Tonight at 8 PM**

Curated with 💙 by NurseCon

NurseCon, LLC, 4025 W. 1st St., Sanford, FL 32771, United States

| Update your preferences

The Examining Attorney made of record a copy of a webpage for "The Nurse Blake Podcast" that includes the image of a man in scrubs with a stethoscope around his neck:[43]

---

[43] February 1, 2023 Final Office Action at 24.

An article from Nurse.org also includes a picture of Nurse Blake with a description that identifies him as having years of nursing experience.[44] Consumers would similarly understand the word NURSE in Applicant's mark to mean a person who cares for the sick or infirm when considered in conjunction with Applicant's services.

Turning next to the element CON, the Examining Attorney argues that CON is a shortened form of "conference" or "convention," which are both types of "special events for social entertainment purposes," and that CON is therefore merely descriptive of

---

[44] November 8, 2023 Denial of Request for Reconsideration at 69.

Applicant's identified services of "arranging and conducting special events for social entertainment purposes."[45]

We find that the evidence of record establishes that CON is recognized as an abbreviated form of "conference" or "convention." A term is merely descriptive when it is a recognized abbreviation for the goods or services in the application or is otherwise understood as being "substantially synonymous" with the merely descriptive word it represents. *See In re Thomas Nelson, Inc.*, Ser. No. 76681269, 2011 TTAB LEXIS 9, at *14-15 (TTAB 2011) (citing *Modern Optics, Inc. v. Univis Lens Co.*, 234 F.2d 504, 506 (CCPA 1956)). The Examining Attorney made of record two definitions of the element CON defining the term as an informal noun meaning "convention"[46] or "an abbreviation when describing a conference or another get together."[47] The Examining Attorney also made of record a copy of the online entry for CON from an acronym and abbreviation dictionary, AllAcronyms.com, which states that CON is an abbreviation meaning "conference"[48] and an entry for "CON" from OnlineAbbreviations.com, which states that "CON" is shorthand for "convention" or "an event that attracts many people who share a common interest and provides opportunities to learn, network and exchange ideas among those

---

[45] 15 TTABVUE 5-6.

[46] June 22, 2022 Office Action at 20 (MERRIAM-WEBSTER DICTIONARY).

[47] November 8, 2023 Denial of Request for Reconsideration at 11 (COMPUTER HOPE DICTIONARY).

[48] February 1, 2023 Final Office Action at 29.

attending the event."[49] The evidence of record therefore establishes that CON is recognized as an abbreviated form of "conference" or "convention."

Applicant's identification of services encompasses "special events for social entertainment purposes" provided at a nursing conference venue, and the evidence of record also demonstrates that Applicant's services of "arranging special events for social entertainment purposes" may themselves include arranging conferences for nurses. The Examining Attorney made an article of record that explains that "Nurse Blake" created an annual conference for nurses, not only for the purpose of providing continuing education, but also for the purpose of providing "fun and a community" for nurses attending the conferences.[50] Applicant's website describes its conference as "An Incredible Experience…designed to bring nurses together."[51] The website lists various special events for social entertainment purposes provided at the conference, such as parties, discos, sporting competitions, and meet ups, through which attendees can "[m]eet other nurses in your specialty throughout the voyage."[52] Applicant's website, shown below, also features images of attendees at the conference engaged in some of these advertised special events.[53]

---

[49] November 8, 2023 Denial of Request for Reconsideration at 5-6.

[50] *Id.* at 69.

[51] *Id.* at 17.

[52] *Id.* at 18-19.

[53] February 1, 2023 Final Office Action at 16-17; November 8, 2023 Denial of Request for Reconsideration at 18.





**EPIC Parties**

NurseCon isn't over until it's all left on the dance floor! We're here to celebrate!



**Drag Shows**

Did you say Drag Shows!? We sure did! Watch our queens lip-sync for the crown.



**Theme Nights**

Theme nights are the best! We'll have 4 of them on the ship.



**Silent Disco**

Lose your mind on the dance floor as you dance to music on your headphones from our dueling DJs.



**Sail Away Party**

The epic Sail Away Party takes over the entire ship with a countdown, DJs and dance floors.



**Sport Competitions**

Compete for top nurse in basketball, dodgeball, or rock climbing.



**Meet Ups**

Meet other nurses in your specialty throughout the voyage.



**Pool Parties**

Join the NurseCon DJs for music and dancing on the pool deck.









The Examining Attorney and Applicant also each made of record numerous examples of third-party uses of marks containing the element CON showing that conferences and conventions often feature special events for social entertainment purposes similar to those provided at Applicant's conferences, including, for example, the following:

- "AFRICON is the conference that brings together pop culture, music, food, innovation, activism, education & more from the global Black Diaspora," featuring a gala for attendees (africon.com/global);[54]

- BUTTCON described as a convention about butt health and fitness featuring dance classes (buttcon.splashthat.com);[55]

- "COUCHCON is about connecting creators and fans," featuring a "Discord Hall" where attendees can "[m]eet new friends…" (couchcon.org);[56]

- ENDOCON described as "Endodontic Conference on Innovation," featuring "Friday evening dinner with entertainment" (endocon.com);[57]

- LITFINCON described as "The premier litigation finance conference," featuring a Rodeo event for attendees with a "top-performing country music artist," and a stand-up comedy act (litfincon.com);[58]

- POINTSCON event for loyalty points programs featuring a "Closing Party" (pointscon.com);[59]

- ICONIC CON USA, "A multi con for all things iconic in nerd culture!" featuring games and cosplay contests (almondtreeevents.com/iconic-con-usa/html);[60]

---

[54] December 22, 2022 Response to Office Action at 63-65.

[55] *Id.* at 66-71.

[56] *Id.*at 72-73.

[57] *Id.* at 79-82.

[58] *Id.* at 87-90.

[59] *Id.* at 98-100.

[60] *Id.* at 205-06.

- MAICON, the "Marketing AI Conference," featuring a meetup event and happy hour for attendees (marketingaiinstitute.com/events/marketing-artificial-intelligence-conference).[61]

Based on the evidence of record, we find that CON, short for the word "conference" or "convention," is merely descriptive of Applicant's services because it describes a venue at which Applicant and third-parties can and do provide the services of "arranging and conducting special events for social entertainment purposes," namely, at conferences and conventions. *Cf. In re Dixie Rests., Inc.*, 105 F.3d 1405, 1407 (Fed. Cir. 1997) (Board properly found that DELTA was the dominant portion of applicant's mark THE DELTA CAFÉ and design where the applicant "disclaim[ed] the generic word 'café'"); *Chutter, Inc. v. Great Concepts, LLC*, Can. No. 92061951, 2016 TTAB LEXIS 385, at *9 (TTAB 2016) (finding that "DANTANNA's is the dominant portion of the mark DANTANNA'S TAVERN because the word 'tavern' is a generic term for…restaurant and bar services, and [the applicant] has accordingly disclaimed the exclusive right to use the word 'tavern.'"), *rev'd on other grounds, Great Concepts, LLC v. Chutter, Inc.*, 84 F.4th 1014 (Fed. Cir. 2023); *In re Binion*, Ser. Nos. 76590702 and 76590729, 2009 TTAB LEXIS 701, at *7 (TTAB 2009) (BINION'S found to be the clear dominant portion of cited BINION'S ROADHOUSE mark for restaurant services where "registrant disclaimed the word ROADHOUSE" because it was generic or merely descriptive of the services"). In Applicant's proposed mark, NURSECON describes a significant feature of Applicant's recited services, namely, that they may be and are provided at nursing conferences.

---

[61] *Id.* at 207-12.

Moreover, the record shows that conferences and conventions themselves may constitute "special events for social entertainment purposes." Specifically, the Examining Attorney submitted several examples of third-party websites identifying conferences or conventions as types of "events" or "special events."[62] A "convention" is defined as "an assembly of persons met for a common purpose,"[63] and a "conference" is defined as "a meeting of two or more persons for discussing matters of common concern."[64] "Conference" and "convention" therefore have the same or similar meanings, i.e., they refer to gatherings of persons for a common purpose. Nothing in the definition of "conference" or "convention" excludes gatherings of persons at special events for social entertainment purposes. A "CON" therefore can be a special event, namely, the gathering of persons for a common purpose of social entertainment; it can also be an event that features social entertainment.

Both the Examining Attorney and Applicant point to third-party registrations to support their arguments as to the descriptiveness, or lack thereof, of the term CON, when used in connection with services related to conferences or conventions. *See Institut Nat'l Des Apellations D'Origine v. Vintners Int'l Co.*, 958 F.2d 1574, 1582

---

[62] November 8, 2023 Denial of Request for Reconsideration at 21 (emilms.fema.gov/is_0015b /groups/12.html) (identifying a "convention" as a type of special event), 22-24 (one-resource.com/the-five-essential-elements-of-event-planning) (identifying a large conference as a type of event), 26-34 (socio.events/blog/types-of-events) (identifying conferences as a type of special event).

[63] June 22, 2022 Office Action at 21 (MERRIAM-WEBSTER DICTIONARY).

[64] MERRIAM-WEBSTER DICTIONARY (2024) (merriam-webster.com/dictionary/conference) (last visited October 7, 2024). *In re Cordua Rests. LP,* Ser. No. 85214191, 2014 TTAB LEXIS 94, at *6 n.4 (TTAB 2014), *aff'd*, 823 F.3d 594 (Fed. Cir. 2016) (the Board may take judicial notice of dictionary definitions, including definitions from online dictionaries that exist in printed format or have fixed regular editions).

(Fed. Cir. 1992) (while not conclusive, third-party registrations can "show the sense in which the word is used in ordinary parlance and may show that a particular term has descriptive significance as applied to certain goods or services.").

It is well established that "[t]he Board must decide each case on its own merits." *Nett Designs*, 236 F.3d at 1342. "[A] mark that is merely descriptive should not be registered on the Principal Register simply because other such marks appear on the register." *In re theDot Commc'ns Network LLC*, Ser. No. 77622942, 2011 TTAB LEXIS 366, at *18-19 (TTAB 2011). Even though the Examining Attorney and Applicant have each submitted examples of varying treatments of CON in numerous registrations for purportedly similar services, we can draw no definitive conclusions from them.[65] Here, we find that the evidence of record is sufficient to show that CON is shorthand for "convention" or "conference," that conventions and conferences are the venue in which Applicant's services can be and are offered, and that conventions and conferences may themselves constitute, or may feature, special events for social entertainment purposes.

---

[65] The Examining Attorney also argues that Applicant has two prior registrations for the marks NURSECON (Registration No. 6756054) and NURSECON AT SEA (Registration No. 6835561), both of which are registered on the Supplemental Register, as further support for her argument that the mark is descriptive. 15 TTABVUE 8-9; February 9, 2023 Final Office Action at 102-105. The services in each of these registrations are not identical to those in the subject application in this proceeding, and the context may differ. Even assuming that the services are related, however, for the same reasons explained above, the prior registration of the same or similar marks on the Supplemental Register is not determinative of the issue of whether Applicant's proposed mark is merely descriptive for the identified services.

Applicant argues that "[e]ven if the separate elements [NURSE and CON] were descriptive, the unitary term NURSECON has no meaning."[66] A combination of two descriptive terms does not avoid a determination that the element as a whole is merely descriptive merely because the two descriptive terms are combined into one word. *See, e.g., In re SPX Corp.*, Ser. No. 75877999, 2002 TTAB LEXIS 53, at *13 (TTAB 2002) (E-AUTODIAGNOSTICS found descriptive for "electronic engine analysis system comprised of a hand-held computer and related computer software"); *In re A La Vieille Russie Inc.*, Ser. No. 75609153, 2001 TTAB LEXIS 541 (TTAB 2001) (RUSSIANART found merely descriptive of dealership services in the field of art); *In re Orleans Wines, Ltd.*, 1977 TTAB LEXIS 96 (TTAB 1977) (BREADSPRED descriptive for jams and jellies that would be a spread for bread).

In this case, we find that the straightforward combination of the two generic or descriptive terms NURSE and CON does not present any unique commercial impression or non-descriptive meaning in connection with the identified services. The combined term NURSECON immediately conveys information about a feature or characteristic of the services, namely that nurse conferences are the venue for the "special events for social entertainment purposes" or that those special events include nurse conferences. Nor does the fact that NURSECON does not include a space between the two elements alter its merely descriptive nature. "It is almost too well established to cite cases for the proposition that an otherwise merely descriptive term is not made any less so by merely omitting spaces between the words…." *Minn.*

---

[66] 13 TTABVUE 8.

*Mining & Mfg. v. Addressograph-Multigraph Corp.*, 1967 TTAB LEXIS 152, at \*5 (TTAB 1967).

Our finding that the term NURSECON retains the descriptive meaning of its individual components when used in connection with the identified services is supported by Applicant's specimen submitted with its Statement of Use, shown above, which uses a capital "N" and "C" in the term NURSECON, demonstrating that consumers would perceive the proposed mark as consisting of the word NURSE and the abbreviation CON, each of which retain their own merely descriptive meaning when combined.[67] *See N.C. Lottery*, 866 F.3d at 1368 (evidence of descriptiveness may come from an applicant's specimen).

Additionally, each of the third-party websites identified above (for conventions or conferences featuring special events for social entertainment purposes) shows that the abbreviation -CON is used as a suffix with another generic or descriptive word to refer to services related to conferences or conventions directed to a specific subject or audience.[68]

---

[67] February 10, 2022 Specimen.

[68] *See also* November 8, 2023 Denial of Request for Reconsideration at 86-87 (DRAGON CON) and 88-95 (DOLLCON DALLAS); December 22, 2022 Response to Office Action at 74-75 (DEFENDER CON), 76-78 (DXCON), 79-82 (GOODCON), 85-86 (JAILCON22), 91-93 (NEOCON), 94-95 (NEUROCON), 101-03 (POWERCON), 106-10 (SKINCON), 117-18 (VILLICON), 177-79 (BANZAICON), 180-81 (BRAVOCON), 187-88 (CYBERCON), 191-95 (FUZZCON EUROPE), 196-200 (GLUECON), 201-02 (GTZCON), 203-04 (HILL-CON), 212-19 (MJBIZCON), 220-22 (MOMOCON), 224-28 (PHENOMECON), and 235-36 (WONDERCON); August 1, 2023 Request for Reconsideration at 19 (DOJOCON), and 22-26 (PIMDCON); February 9, 2023 Final Office Action at 46-52 (HEALTHCARE CON), 53-62 (TRAUMACON), and 63-71 (WOUNDCON).

Applicant argues that NURSECON is a coined term that "does not exist other than as Applicant's brand."[69] "[T]he statute does not exempt from the prohibition against registration of merely descriptive terms those that are not in common or widespread use, simply because of relative infrequency of use." *In re Eximius Coffee, LLC*, Ser. No. 86262060, 2016 TTAB LEXIS 472, at *20 n.14 (TTAB 2016). "[T]here is no requirement that the Examining Attorney prove that others have used the mark at issue or that they need to use it, although such proof would be highly relevant to an analysis under Section 2(e)(1)," and "'the fact that Applicant may be the first or only user of a term does not render the term distinctive' if, as here, it has been shown to be merely descriptive of the [services] in the application." *Zuma Array,* 2022 TTAB LEXIS 281, at *21 (cleaned up). *See also In re Bailey Meter Co.*, 102 F.2d 843, 844 (CCPA 1939); *In re Sun Microsystems, Inc.*, Ser. No. 75430946, 2001 TTAB LEXIS 258, at *10-11 (TTAB 2001) ("[T]he fact that applicant may be the first and/or only entity using [a term] is not dispositive where, as here, the term unequivocally projects a merely descriptive connotation."); *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004) (trademark law does not countenance someone obtaining "a complete monopoly on use of a descriptive term simply by grabbing it first.") (citation omitted).

Based on the evidence of record, we have no doubt that NURSECON is merely descriptive of "arranging and conducting special events for social entertainment purposes." Because Applicant's proposed mark is merely descriptive of the identified

---

[69] 13 TTABVUE 8.

services, it is ineligible for registration on the Principal Register in the absence of a showing of acquired distinctiveness.

**Decision**: The Section 2(e)(1) refusal is affirmed. 15 U.S.C. § 1052(e)(1).